Okay, good morning. Before we start the clock running, I just have a couple of questions because we have a lot of lawyers sitting in here. So, maybe I'll ask since appellants are at the podium first, do you intend to use, are you going to be the only person arguing? Your Honor, Andrew Melzer for the appellants. I will be arguing the issues of jurisdiction and intervention, and my colleague, David Sanford, will be arguing the decertification order. Okay, and so, and in that, you also have your rebuttal time. So, there's two of you arguing in your rebuttal time. So, how are you proposing to divide the time? Your Honor, I will propose to take five minutes on the issues of jurisdiction and intervention, and Mr. Sanford will take ten minutes. I believe that he intends to reserve part of that time for rebuttal. Okay, so the rebuttal time will come out of your ten, is that correct? Yes, Your Honor. Okay, thank you. And then, just while we're doing this, on COSTCO, is one person arguing or two? Just one. Just one. Okay. All right, thank you. All right, now we'll start the clock, and you can begin. May it please the Court. This Court has jurisdiction over Plaintiff Morrow's appeal under binding circuit law. The leading case is Nowruz v. Charter Communications, which is cited in our reply brief on the decertification at page 3, and is reaffirmed by Campione v. Old Republic. The party settlement agreement is at page, starts at page ER 29 of the record on the intervention appeal. In accordance with Nowruz, the release in the settlement agreement is limited to the plaintiff's individual claims. Further, the agreement preserves Plaintiff Morrow's financial stake in the appeal on decertification by providing that he will be eligible for a service award if the case is resolved on a class basis. Therefore, he has a concrete economic incentive to obtain reversal of the decertification order. This is clearly sufficient under Nowruz. So, if we find that Mr. Stiller has standing, is a proposed intervener's appeal moot? There are two possibilities to follow in that case, and I think it starts with the purposes for intervention. The party settlement, this was designed to facilitate an appeal of the We think that the Ninth Circuit is correct in those rulings, but there might be a circuit split. Intervention into the existing appeal will safeguard against the possibility of an intervening change in law by preserving the party's intent, maintaining the status quo, and ensuring that the court retains jurisdiction to issue a meaningful decision on the Rule 23 decertification appeal. So, the district court said, well, that doesn't really help the appeal, that just aids the motion to intervene on that ground, right? Yes, and we think that that was an improper distinction between aiding the appeal and aiding the jurisdiction of the appellate court. In Freeman v. Hittle, at 747 F. 2nd, 1299, this court adopted the Seventh Circuit's conclusion in amalgamated meat cutters that a district court can issue a Rule 54b certification even after the filing of an appeal to cement appellate jurisdiction. Well, if we agree that we have appellate jurisdiction, then the intervention motion isn't going to make a difference. Yes, we would say that the intervention streams lines the litigation and advances judicial economy. Secondarily, it ensures that there is a plaintiff on remand, but the court need only follow Nehru's and Campiona in this case and decide the appeal on their merits. Intervention can be revisited at an appropriate juncture if it is, in fact, necessary. Okay. If there are no further questions, I would... Is co-counsel the one I would ask about Tyson and representative evidence? That's correct. Okay. I would see the remainder of my time. Okay. Thank you. May it please the Court. Good morning. Good morning. My name is David Sanford, and I represent the appellants. If this Court affirms the decertification order below, it would violate established Supreme Court precedent and overturn recent Ninth Circuit case law, including Jimenez, Torres, and Leyva. And this Court would create a new bright line rule that would require plaintiffs to establish at class certification that 100% of class members suffered injury. The Court below found, and I quote, substantial, albeit partially rebutted, evidence demonstrating that Costco had a de facto policy of detaining employees in warehouses during closing procedures without pay. The Court also held that plaintiffs had identified common questions. So commonality isn't that even within the decertification, the Court said there's still common questions. That's correct, Your Honor. What are predominance? That's correct. But let me kind of take you through a couple of things that I want to sort of tick off because I want your answer. So what's your best case for your argument that a two-stage burden-shifting framework used in International Brotherhood of Teamsters v. U.S. applies outside of Title VII cases? Well, Your Honor, Jimenez in the Ninth Circuit would be a case directly on point. But you don't really have anything that specifically says that burden-shifting applies to wage and hour cases, right? You're asking us to extend. Well, that's right. On the burden-shifting, that's right. But the burden-shifting question really isn't the essential issue in this case. There are many different ways that a court can fashion relief in a Stage II proceeding, and the Stage II proceeding need not involve burden-shifting. Yes, Your Honor. Let me just, just to take a step back, you know, the district court here was concerned that although Costco had a collection of policies that required control of the doors at their closeout, it looked at the evidence that it was implemented, that the policy itself didn't say, employees have to stay in here in violation of overtime laws. They said the managers are all implementing these in different ways at different stores, and at some stores there is no requirement that employees stay and work and accrue overtime without getting paid. And so that was its concern, as I understood, about this predominance issue. Was there something wrong with that? Yes, Your Honor. Here's what the record clearly shows. Costco had clearly written policies. It had a lockdown policy, perfectly reasonable as it is. It's a loss prevention policy requiring all employees to be locked in to Costco warehouses at the end of the late shift. But it didn't require them to be there in excess of 40 hours of work and not get paid for it, right? There was nothing in those policies that required overtime unpaid. Well, it required that the compensation and time card systems, Your Honor, required employees to actually clock out at the end of their shift. And I didn't really understand that because the way the language looks, they have to clock out when they finish working. But under California law, that would be a question, whether being subject to the employer's control in a mandatory fashion. Exactly right. So let's read those policies as saying during that period they were working for purposes of California law. I didn't see anything actually requiring employees to be controlled, to be mandatorily have to spend more time than their 40 hours a week and not get overtime. That's what the district court found too, I believe. Yeah, but Your Honor, it's a legitimate open question for trier fact to determine whether or not that actually is compensable time. So then Costco introduces all this evidence saying that the policies were implemented in different ways at different stores. I mean, it seems more like the Walmart Dukes case where there was a policy, a general policy saying we don't have a policy on employment, hiring, exercise your discretion, and the court said it's implemented different ways at different stores, so there's no common question, there's no predominance. Your Honor, if I could just be really clear about what the policies dictate. The policies mandate, without exception, that the lockdown policies are applied by managers in every warehouse throughout the country. Right, but Costco says they submit evidence in some cases it wasn't, it was implemented in a way that didn't cause employees to agree. But Costco is relying on a few declarations and some testimony that shows that some managers violated the policy. It wasn't that managers had discretion to enforce the policy. That's the Walmart case. This is not a discretionary thing, Your Honor. No, I don't think that's right. I mean, they had evidence that they timed the closeout so it was between shifts and some allowed them to clock in or get time. The question is what does the policy state, not what do the managers do. There were like three policies that you mailed together, but none of them say exactly what you're saying. The policies mandate that the doors be locked and individuals stay in the premises while they're swiped out. But it's only a violation of California labor law if that requires the employees to accrue overtime for which they're not paid, and that was the evidence the district court looked at said no, different stores do it in a different way, as opposed to Teamsters where they had a discriminatory policy. So I can understand that if Costco had a policy, I think in Jimenez there was a policy, one of those cases, maybe it was Maria, there was a policy that said you have to, you know, you're encouraged to work overtime. This is our policy company-wide. But, I mean, the district court credited evidence that there wasn't such a Costco policy. Actually, the Jimenez case is instructive, Your Honor, because in Jimenez there wasn't a policy. It was an unofficial practice, and that was the question that was certified by the Jimenez court, saying that that question can go to a jury as to whether or not that unofficial policy was routinely enforced as a matter of practice. And so the evidence at Costco was that the policy of Costco generally was to require employees to work unpaid overtime? I mean, there was evidence that was presented by Costco to the contrary. Just to be clear, Your Honor, of course no company is going to have a policy that says we're not going to pay people their rightful wages. But the policies at issue here all lead to that inevitable conclusion. If you have a lockdown policy that mandates people stay on the premises, if you have a policy that mandates that people swipe out, and they're waiting off the clock while managers take jewelry out of the jewelry bins and take cash out of the cash register and do a number of other administrative tasks, then the inevitable result of that is that people will not be paid. In fact, I understand that as a litigating argument, but I guess I'm just trying to understand why the district court was wrong in saying there's evidence that's implemented different places at different stores, so I don't see the common question about whether. So the common question would be, is what Costco did or does at individual stores with respect to these policies deprive employees of overtime pay? Yes. Did Costco have these policies in question? But if the implementation is different from store to store, which is what the district court apparently credited the Costco evidence, then. Your Honor, there. . . But the district court still found the common question. It said predominance was the issue. That's correct. But you were arguing that you argue that the district court said everyone's got to have the exact same damages, which I don't agree with you that that's what the district court said. I don't agree with that. But on the Tyson issue, the district court said you can't use an expert for liability, and Tyson now seems to say that you can under certain circumstances. Okay, so the district court, in my view, may have made an error, but it was prior to Tyson, so the district court doesn't know that. But does Tyson really help you? Does it need to be remanded for the district court to apply Tyson in the first instance? That is exactly what I was going to propose in my ending, but I'm happy to propose it right now to this court. In light of intervening case law, including Tyson's, which is directly on point in this case, including Jimenez, which is directly on point in this case, and we submitted to the court the Torres matter, which is also directly on point, those three cases taken together clearly would suggest reversal. But you still have Wal-Mart talking about this type of evidence, and Tyson really hedges, too. It says, well, sometimes yes, sometimes no. Let me ask you specifically about Tyson. Tyson said you can use this expert evidence as a permissible means of establishing hours worked in a class action, but you have to show that each class member could have relied on that sample to establish liability had each brought an individual action. So we'd have to say that a Costco at a store where the management implemented the policies in a way not to deprive them of overtime could point to examples at a store where the policies were implemented in a different way. So I didn't see how Tyson actually helped you on that. Your Honor, I think there are numerous cases that are instructive on just that point. Class cases are about what is routine. Well, we're just looking at Tyson, so you would have to tell me what evidence could an individual class member, an individual employee at a store where the policy was implemented lawfully, could use in an overtime case against Costco? Your Honor, plaintiffs would introduce evidence that involved the policies first and foremost, and the jury would be asked to determine whether or not those policies applied routinely across all Costco warehouses. The Supreme Court in Teamsters and Wal-Mart. Well, we know the policies were applied routinely, but the question was were they implemented in an unlawful way. I mean, that's the difference between Teamsters where there was a discriminatory policy as opposed to here, the policy is not unlawful. Right. But the question isn't whether or not the policy was always applied in every instance every day. The question is whether or not there was a standard operating procedure to follow the policy. But the policy says the standard operating procedure for how it was implemented varied from store to store. I mean, that was their evidence. Well, there is some evidence. There are a few declarations and some testimony that suggests that Costco managers viewed the policy as discretionary, but in viewing it as discretionary, they violated the policy. So what Costco would have this court believe is that violations of the policy, admitted exceptions and violations of the policy, should govern the legal determination here. And the question for a jury wouldn't be whether there are exceptions. The question would be whether the policies were uniformly enforced as a general matter. But you sort of have a Wal-Mart problem here in the sense that there were people in the Wal-Mart group that they were saying they didn't get promoted and they never even put in for a promotion or they weren't even. And so you've got people in your group that have never been held over. Well, in the Wal-Mart case, the question for the court was, was discretionary authority given to managers enough of a glue to resolve the case on a class-wide basis? The court held no to that question. That's not the question before the court here. Whether a neutral lockdown policy, because it doesn't require overtime, is applied in every single Costco in an unlawful way. And the district court said those questions don't predominate. Well, Your Honor, with all due respect, I would disagree with the characterization of it being neutral. I think if you take the lockdown policy in combination with the compensation policy, in combination with the swipe-out policy. It necessarily requires overtime. Yes. Okay, I understand your argument. Okay, we've taken you into overtime, but I'll give you two minutes for rebuttal. Thank you very much, Your Honors. Okay, thank you. Good morning. Good morning, Your Honors. David Cadue for Costco. The answer to the question that both Judge Callahan and Judge Okuda asked, which has to do with intervention, is yes. If this court decides that Morrow has standing, the motion to intervene is completely moot. The court needs to spend no time on that. Because the only purpose of the motion to intervene was to provide backup appellate standing. And if you've got an appellate with standing, then there's no need to consider the intervention question. Now, as to the Rule 23 issue, Costco's position is the court should affirm, because there is substantial evidence to support Judge Curiel's finding that individual issues predominate. So if it's true, so opposing counsel at the end says, look, when we read these policies together, they necessarily require employees to work unpaid overtime. And although there may be individual cases where managers violate the policy, those are just exceptions. But the general policy, company-wide, requires unlawful overtime under California law, or at least there is a common question as to that. Why isn't that correct? Well, for one reason, that assertion is directly contrary to Judge Curiel's direct finding. He specifically found that the alleged policy does not necessarily result. But he still said there was commonality. He said there was commonality, of course. And so what was the common question? Oh, the common question is whether. . . According to the judge. According to the judge, the common question was whether Costco had a security policy, a pay policy, and a timekeeping policy that uniformly enforced that could have the effect of causing unpaid overtime. So how is that different than what Judge Okuda just said? Because Judge Okuda was referring to a contention by my friend here that these policies necessarily and always created unpaid overtime. And, in fact, Judge Curiel identified at pages 12 to 14 of his opinion, he identified substantial evidence to support his conclusion, his core finding that individualized issues predominate. He found eight different ways in which Costco managers could exercise discretion so that there would not be that necessary consequence that Judge Okuda was referring to. And one among many was letting employees out during the till pull. Another was delaying the till pull, giving a grace period to employees to let them out of the building before the till. But he put that in the predominance prompt. Yeah, that is in the predominance. Yes, and, again, that goes to the question. . . You're saying there isn't a common question, and if there is a common question, there's not predominance. Yes. We're conceding cheerfully there's a common question, but we're saying there's no predominance because the common policies don't necessarily. . . You say conceding cheerfully. You'll still argue it, but. . . No, I'm not arguing it. We're not challenging Judge Curiel's finding, which is based on substantial evidence that there's commonality. We are, but we're also supporting Judge Curiel that there's substantial evidence to support his finding that individual issues predominated. Oh, so opposing counsel says, look, the policy is unlawful, and the fact that some managers ignore the policy isn't enough to say that it's not a blanket policy affecting all employees. Okay, well, first of all, the policy is not unlawful. Judge Curiel did not find it was unlawful. This is not a Teamsters case because, remember, in Teamsters, the finding was that it was a standard operating procedure by the company to discriminate against people on a basis protected by Title VII. So that's the standard operating procedure. So if you find the standard operating procedure, you found liability already. Now, the question is, who was harmed by it? Then you go to individualized hearings. We're not at that stage here, and if you look at the Jimenez case, I would suggest, contrary to my friend, that Teamsters is not cited in support for him. And as I can't find any wage-dollar case that uses Teamsters, and the Duran case, the California Supreme Court case that we discussed in our brief expressly rejects Teamsters. Judge Carter didn't know about Tyson because it hadn't come out yet, and he basically said that excluded an expert on liability issues, right, said you can't have that. You are correct. Now, Tyson has given us a nuance on that. Yes. So should we remand it back to the district court to apply Tyson in the first instance to see if – because their expert didn't know about Tyson either, right? Well, no, their expert – of course, their expert did not predict how Tyson would come out, but certainly their expert knows that there are such things as statistical studies that people can do. There are factor experts, factor studies that people can do. In the Tyson case itself, there was a factor study that was critical to proving liability. In our case, there was a factor study done by Dr. Fernandez, who tried to estimate how long till poles and jewelry poles lasted. Their experts were not ignorant of statistical methods in order to prove things. You're absolutely right, Judge Callahan, in saying that Judge Curiel did not predict how Tyson would come out. Because he said they couldn't give that evidence for liability, right? Right. He said that relying on – Now they can, but under certain circumstances. Exactly. But if you read Tyson and understand, as the court does, the basis of Tyson, all Tyson does is it just takes the just and reasonable inference doctrine that once applied only to damages, and now it applies it to liability. So in Tyson, they were all – all of the employees were subject to the donning and doffing policy. Right. And the question that the expert addressed was how many minutes is it? Exactly. So here, the argument, as I understand it, is all employees are subject to this unlawful required overtime, lockdown required overtime policy. And so the question is how many minutes is it? Same thing. Why isn't that correct? Well, it's completely different in that in Tyson, every day, every employee was subject to not being paid fully for the doffing at the end of the shift. In our class – our class, by contrast, is grossly overbroad. Our class includes anyone who clocked out after closing time, anyone on a weekday who clocked out between 8.30 and who left by about 11, 11.30 at night. The till pull itself lasts maybe 3 to 30 minutes, depending on various circumstances. That occurs generally early in the evening. The plaintiff's class addresses the entire class of people who left any time during the evening. Many of these people, by definition, would never, ever be subject to a till pull or a jewelry pull delay because they were always on the clock during the till pull and the jewelry pull. And to the point you made earlier, Judge Okuda, in Tyson, an individual, a single employee could have relied upon the study that was done to determine how long, in his or her individual case, the doffing took. In our case, there's no possible way that an employee in Chula Vista, California, could rely on some study to show that that was done across California to tell, to estimate how long that Chula Vista employee was detained, if at all. Would you dispute that there could be some subclasses? Well, I think subclasses would theoretically be a possibility, but that's where we get into the abuse of discretion standard. There are a lot of things that Judge Curiel might conceivably have done, and we can all sit around and second guess how a trial judge should have done things. But the abuse of discretion is whether he had substantial evidence to make his findings that led him to conclude, as a reasonable person might, that the individual issues predominated. The Howard v. CVS case that we recently cited is an example of this court saying, sure, we may have come to a different conclusion. We may have found that some pharmacy data was reliable while the district judge found it unreliable, but it wasn't abuse of discretion for the judge to make that call. And there's an allegation here that if a manager does the right thing and does not deprive an employee of any pay, that he or she is somehow violating the policy. That's just totally untrue. That's not supported by anything that Judge Curiel found in the record, in excerpts of Record 104 and 105, for example. There's a management memo that catalogs best practices for Costco managers to apply to implement all of these policies, namely the security policy, the pay policy, and the policy, which hasn't been mentioned yet today, the policy, by the other side, the policy that Costco forbids off-the-clock work and pays for all time under the control of the employer. And Judge Curiel also found that Costco took special efforts to make sure people were paid. If people complained about not being paid, they could go to their payroll clerk, they could go to their manager, and Costco would make good on that. This isn't a case like the Apple case that the other side cites, where, by policy, Apple said, we're not going to pay for bag checks. That was Apple policy. In this case, Costco's policies are all lawful, and they're all consistent with each other. They can be applied in such a way as to leave someone off the clock without being paid, but that's the exception, not the rule. That's not the intent of the policies. And so the cases mentioned by Mr. Sanford, Jimenez, Torres, and Leyva are all consistent with our position. The judge here did not apply any bright-line rule of 100% injury. He certainly mentioned as a fact that not every class member is going to be injured as a result of these policies. Well, that's simply a fact that goes into the overall calculus in his ultimate determination that we're not predominating common issues. So if there was a store, this gets a little to Judge Callahan's subclass question, if there was a store where the management implemented these policies in a way so that employees had to stay overtime and weren't compensated during the closing procedures, and that store brought a class action, there would be employees at that store who weren't affected by the policy for the reasons that you explained. They were different chefs or they're in the pharmacy or the food court, and they're not subject to it. So would there be common questions of predominance there where the policy was implemented in an unlawful way, or would you still be arguing that no predominance because some employees weren't affected? No, we're not taking an extreme position that no class is certifiable unless every class member is affected. In the example you just gave, if the other side had identified a policy where Costco managers did implement the policy in an unlawful way, and if you'd met numerosity and other elements of a class action, sure, in theory that class could have been certified as to that warehouse. Just as in the Walmart case, one of the suggestions was to certify it warehouse by warehouse for Walmart. But that's not the course that the plaintiffs here took. They took an extreme position of trying to cover everybody who clocked out during the evening, regardless of whether they ever saw a tailpole. Remind me, how big is this class? Over 30,000 people. And the other side says that Judge Curiel relied on the size of the class to deny certification. Well, that was certainly one factor among many. I mean, certainly if you have 500 employees versus 30,000, if you're a practical trial judge trying to determine whether I'm going to do many trials, that's something you consider. In the Apple case they talked about, Judge Alsup had 12,000 employees, and he very ambitiously said, okay, we're just going to have an old-fashioned claims process. And that's well and good for Judge Alsup. I'm not suggesting that was an abuse of discretion, but he also could have said, also exercising his discretion, saying that's just too many, many trials. And also in the Apple case, it's worth pointing out that Judge Alsup, to certify that class, was very creative, and he defined the class as anyone who, for reasons of personal convenience, brought a bag to Apple. So he recast the issue so as to certify it. And then in a decision that came down before the appellant's reply brief, but is not reported in that reply brief, Judge Alsup gave summary judgment to Apple, the employer in that case, on the basis that since the employees had the choice of bringing a bag or not, then under the Overton v. Disney case, under California law, there was no being subject to the control of the employer. So even in that extreme case that they're citing, I would suggest Judge Alsup certify that class, knowing he wasn't going to have to conduct 12,000 mini-trials. And if there are no more questions, I think I can sit. All right. Thank you. Thank you, Your Honors. The court decertified the class in this case because it held that there's no class-wide method of determining whether, how often, and for how long class members actually experience off-the-clock work as a result of the policies. We wouldn't be in this situation if Costco had kept records, which they're statutorily obligated to do. By not keeping records, Costco now says, well, this is too complicated. And the judge agrees there are too many issues about what the appropriate proof is at the class stage. The district court got it wrong. There are common questions that drive the issues in this litigation at the liability stage. The issues that Judge Curiel identified as being appropriate in this analysis is really appropriate for a second phase. And, Judge, you asked earlier about Tysons. I think Tysons is directly on point here. Tysons, like Costco, failed to keep records that would have shown whether, how often, and how long each individual employee worked off-the-clock. Tysons, like Costco, argued that certification wasn't proper because there were too many individualized issues. The Supreme Court upheld certification, allowing common and representative evidence, especially where defendant fails to meet its statutory obligations to keep the records, citing Mount Clemens. That's the case we have here. And plaintiffs shouldn't be prevented from putting on a case at trial because Costco failed to keep records. And, essentially, that's what the analysis here shows. So we would respectfully ask this Court to remand in light of Costco. I mean, in light of Tysons, I'm sorry. Thank you both for your argument. This matter will stand submitted. Thank you, Your Honor. This Court is in recess until tomorrow at 8 p.m. All rise.
judges: Callahan, Bea, Ikuta